86 A.3d 204

# In re THIRTY–THIRD STATEWIDE INVESTIGATING GRAND JURY.

## Petition of Pennsylvania Turnpike Commission.

Supreme Court of Pennsylvania.

Argued March 5, 2013.

Decided Feb. 18, 2014.

Arthur T. Donato Jr., Esq., Law Offices of Arthur Thomas Donato, Jr., Media, for PA Association of Criminal Defense Lawyers.

James C. Sargent Jr., Esq., Scot Russel Withers, Esq., Lamb McErlane, PC, West Chester, John Edward Savoth, Esq., Philadelphia, for PA Bar Assoc. & Phila Bar Assoc.

Lorie Karin Dakessian, Esq., Robert N. Feltoon, Esq., Matthew Hermann Haverstick, Esq., James J. Rohn, Esq., Joshua John Voss, Esq., Conrad O'Brien PC, Philadelphia, for Pennsylvania Turnpike Commission.

James Patrick Barker, Esq., Laurel Brandstetter, Esq., Kathleen Granahan Kane, Esq., Linda L. Kelly, Esq., Richard A. Sheetz Jr., Esq., PA Office of Attorney General, for Attorney General's Office.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Chief Justice CASTILLE.

Appellant, the Pennsylvania Turnpike Commission (the "Commission"), filed a petition for review of an order of the supervising judge of the Thirty–Third Statewide Investigating Grand Jury, sitting in the Dauphin County Court of Common Pleas, which denied the Commission's motion for a protective order seeking to prohibit the Office of Attorney General (the "OAG") from reviewing allegedly privileged or protected communications between the Commission and its counsel. Final orders in matters involving investigating grand juries are within the exclusive appellate jurisdiction of this Court. 42 Pa.C.S. § 722(5). This case does not involve a final order, but the Court accepted the Commission's petition for review and directed briefing and oral argument to consider the important question of privilege in the context of Commonwealth agencies subject to grand jury investigation. We now affirm.

## I. Background [1]

Since 2009, the OAG has been conducting a statewide grand jury investigation into whether criminal statutes have been

1. The record in the grand jury proceedings below, and the reproduced record on appeal, have been sealed. In this Opinion, we refer only to legal arguments and factual background included by the parties in their briefs filed in this Court, which are not sealed. Because the appeal

violated by the Commission, its employees and others, in connection with, *inter alia,* the Commission's employment and procurement practices. Throughout the investigation, the OAG has issued subpoenas to the Commission and third parties. According to the Commission, it has produced more than 140,000 pages of material to the OAG in response to subpoena, but with regard to certain requested material, the Commission invoked the protections of the attorney-client privilege and the attorney work product doctrine. The Commission sought to negotiate with the OAG a plan for production of the material through the use of a "privilege log." The Commission proposed the following review process: 1) the OAG would identify in general terms (either by custodian, name of outside law firm, or some other specific identifying information) documents and communications of a potentially privileged nature that the OAG wished to review; 2) the Commission's counsel would then review the material, produce documents that were not protected, and provide the OAG with a privilege log of any material that the Commission withheld on the basis of the attorney-client privilege or work product doctrine; 3) following receipt of the privilege log, if the OAG either disagreed with the stated basis for withholding an item, or otherwise believed that an exception existed that would override the asserted protection, then the OAG would identify those items to the Commission's counsel; and 4) if no agreement could be reached about those items, then counsel would promptly provide any material in question to a court for *in camera* review and disposition. *See* Pa. R.Crim. P. 573(F) (on motion, court may permit showing of disputed discovery material to be made in form of written statement to be inspected by court *in camera* ). Commission's Brief at 5–6. The OAG rejected the Commission's proposal.

Subsequently, the Commission filed a motion for protective order with the supervising judge of the grand jury, the Honorable Barry F. Feudale, seeking to prevent disclosure of the allegedly protected materials, and to allow instead the production of material through the proposed privilege log

arises out of legal questions, rather than factual disputes, our expression is not truncated in any material fashion.

which would identify items withheld on the basis of the attorney-client privilege or work product doctrine.[2] The Commission maintained that it could invoke these privileges because the statutory codifications are unequivocal in their application to all attorneys and all of their clients, and that nothing in the Commonwealth Attorneys Act (the "CAA"), not even the broad "books and papers" provision, 71 P.S. § 732–208,[3] eliminates, modifies or otherwise qualifies privileges for Commonwealth agencies. In response, the OAG insisted that it should have "unfettered access" to all requested items, and that the attorney-client and work product privileges do not protect the documents and records of a Commonwealth agency from a grand jury subpoena.

On April 24, 2012, Judge Feudale denied the motion for protective order and filed a Memorandum Opinion under seal.

2. The Commission claims protection under the attorney-client privilege and the work product doctrine. We note that the U.S. Supreme Court has referred to the work product doctrine as a "qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.' " *United States v. Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). *See also Commonwealth v. Kennedy*, 583 Pa. 208, 876 A.2d 939, 945 (2005). As we observed in *Commonwealth v. Williams*, 624 Pa. 405, 86 A.3d 771, 2014 WL 627133 (Pa. February 18, 2014), the work product doctrine does not fit neatly into the traditional privilege concept, which addresses a legal right or immunity granted to a person or class of persons: for example, the attorney-client privilege protects the client from testimonial disclosure of confidential communications with his attorney. *See* 42 Pa.C.S. § 5916 ("In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."); 42 Pa.C.S. § 5928 (same, respecting civil matters). The work product doctrine, on the other hand, is an exemption from discovery for certain types of documents. *See* Pa. R.Crim. P. 573(G) ("Disclosure shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney ... or members of their legal staffs."). For ease of discussion, we may refer to the work product doctrine as a privilege, while still appreciating the complexity.

3. Section 208 of the Commonwealth Attorneys Act provides: "The Office of Attorney General shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties under this act." 71 P.S. § 732–208.

Judge Feudale concluded, in relevant part, that the OAG has the right to access all of the requested material pursuant to the books and papers provision of the CAA, and that the attorney-client and work product privileges do not preclude the OAG's access to these materials.

The Commission filed a petition for review in this Court pursuant to Pa. R.A.P. 3331(a)(3) and Chapter 15 of the appellate rules, asserting that the supervising judge's interlocutory order was immediately appealable as a collateral order. We granted review, ordered briefing, and directed that the matter be listed for oral argument. *In re Thirty–Third Statewide Investigating Grand Jury,* 616 Pa. 414, 48 A.3d 1217 (2012) (*per curiam* ). Mr. Justice Saylor filed a Dissenting Statement noting, *inter alia,* that the Commission argued that its right to review arose under the collateral order doctrine; that the Court's prior decisions had declined to review privilege assertions in the grand jury setting under the collateral order doctrine, for reasons relating to the interests and complexities particular to the investigative grand jury process; and that interlocutory review in the grand jury setting, in the few instances deemed appropriate, generally proceeded under the Court's powers of extraordinary jurisdiction. Justice Saylor noted that he was uncomfortable with a movement away from that constancy of approach in the grand jury setting; and thus, he would have denied collateral order review. *Id.* at 1217–18 (Saylor, J., dissenting).

The parties have briefed the following merits issues: 1) whether the attorney-client privilege and the work product doctrine apply to records and communications of Commonwealth agencies in the context of a criminal investigation by the OAG; 2) whether the books and papers provision of the CAA, 71 P.S. § 732–208, waives and eliminates the attorney-client privilege and work product doctrine for Commonwealth agencies in a criminal investigation by the OAG; and 3) whether a Commonwealth agency and the OAG are the same "client" for purposes of invoking the attorney-client privilege

and work product doctrine in a criminal investigation by the OAG.[4]

## II. Appellate Jurisdiction

The question of whether the order below is appealable implicates this Court's jurisdiction. *Commonwealth v. Kennedy*, 583 Pa. 208, 876 A.2d 939, 943 (2005). Our *per curiam* order accepting the petition for review for briefing and argument did not address the basis for our exercise of jurisdiction, and the parties have not made arguments on this point in their briefs. The Commission states simply that the appeal involves a collateral order issued by the supervising judge of a statewide investigating grand jury, and thus, in its view, the order is immediately appealable pursuant to Pennsylvania Rules of Appellate Procedure 313, 702(c) and 3331. Given the salient points raised in Justice Saylor's dissent to our *per curiam* order, some discussion of the basis for our jurisdiction over the instant interlocutory order is appropriate.

Appellate Rule 313 provides that an "appeal may be taken as of right from a collateral order of an administrative agency or lower court." Pa.R.A.P. 313(a). The Rule defines a collateral order as one that is "separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). *See Commonwealth v. Wright*, 621 Pa. 446, 78 A.3d 1070, 1077–79 (2013) (discussing collateral order doctrine and allowing immediate Commonwealth appeal from interlocutory order regarding criminal defendant's competency to waive rights on postconviction review). Appellate Rule 702(c) provides that all petitions for review related to special prosecutions or investigations shall be filed in the Supreme Court, and Appellate

4. In granting the Commission's petition for review, this Court did not specify issues for consideration in this appeal. We have listed the issues as phrased by the Commission as the petitioner/appellant. As explained *infra* at footnote 15, and accompanying text, we need not engage in extended analysis of the third issue posed by the Commission, given our disposition of the first two issues, which we will consider together.

Rule 3331(a)(3) further provides that an "order entered in connection with the supervision, administration or operation of an investigating grand jury or otherwise directly affecting an investigating grand jury or any investigation conducted by it" shall be subject to review pursuant to Chapter 15 of our appellate rules related to judicial review of governmental determinations. *See also* 42 Pa.C.S. § 722(5) (Supreme Court has exclusive jurisdiction of appeals from final orders of courts of common pleas in cases involving convening, supervision, administration, operation or discharge of an investigating grand jury or otherwise directly affecting such grand jury or any investigation conducted by it). *But see* Pa.R.A.P. 3331(d) (interlocutory or final nature of order shall not be affected by this rule and unless independent grounds appear for review of an interlocutory order, interlocutory nature of order will be sufficient reason for denying petition for review); Note to Pa.R.A.P. 3331 (rule "is intended to provide a simple and expeditious method for Supreme Court supervision of special prosecutions and investigations, *e.g.*, orders of the supervising judge of an investigating grand jury," but is not applicable to review of investigating grand jury issues that collaterally arise in plenary criminal prosecution initiated by complaint, information or indictment).

Outside the grand jury context, this Court has applied the collateral order doctrine to allow immediate review of interlocutory orders involving privilege matters, most often and recently in cases arising under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541–9546. In the PCRA context, both defense and Commonwealth appeals involving interlocutory orders affecting privilege have been deemed to be reviewable collateral orders. *See, e.g., Wright, supra; Commonwealth v. Harris*, 612 Pa. 576, 32 A.3d 243, 251 (2011) (defense PCRA appeal; holding that "orders overruling claims of privilege and requiring disclosure are immediately appealable" as collateral orders); *Commonwealth v. Williams, supra* (Commonwealth appeal from PCRA discovery order involving trial prosecutor's notes, where order alleged to violate work product doctrine, deemed reviewable collateral order). In the

wake of cases such as *Harris,* our approach in this area may properly be described as uniform and categorical. *See Thirty–Third Statewide Investigating Grand Jury,* 48 A.3d at 1217–18 (Saylor, J., dissenting).

■    Within the context of a grand jury proceeding, we have recognized that an otherwise interlocutory order may be reviewable if it satisfies the requirements of the collateral order doctrine, but that the doctrine should be "stringently applied." *See In re Dauphin County Fourth Investigating Grand Jury,* 596 Pa. 378, 943 A.2d 929, 935 (2007). However, as Justice Saylor accurately noted in his dissent to our exercise of jurisdiction here, in cases where the interlocutory grand jury appeal derives from a privilege-based challenge to a subpoena, our approach has been to disallow review unless the appeal arises in the context of a contempt proceeding and actual sanction for failing to comply with the subpoena. Thus, we have held that "[o]ne seeking to challenge the propriety of a grand jury subpoena must generally choose between complying with the subpoena and litigating the validity through contempt proceedings," noting that this "approach facilitates the development of an adequate factual record in support of the reasons supporting resistance to the subpoena." *In re Twenty–Fourth Statewide Investigating Grand Jury,* 589 Pa. 89, 907 A.2d 505, 510 (2006). In other words, instead of allowing immediate appeal of an order denying a challenge to a grand jury subpoena via the collateral order doctrine, we have ordinarily required that the challenger of the subpoena refuse compliance and be held in contempt before we will exercise jurisdiction to review the merits of the interlocutory matter. *Id.* at 511; *Dauphin County Fourth Investigating Grand Jury,* 943 A.2d at 935 (denying review of interlocutory orders entered by supervising judge of grand jury quashing in part and allowing in part certain grand jury subpoenas; petitioners had not yet exposed themselves to contempt and also did not argue that orders met requirements of collateral order doctrine, but "it is clear that the [collateral order] doctrine does not apply"). This general practice supports the important "policy against unnecessarily impeding a grand jury

investigation" and avoids the danger of a reviewing court placing itself "at the very heart of a grand jury's investigation" as it attempts to determine whether or not the contested order is indeed collateral. *Twenty–Fourth Statewide Investigating Grand Jury*, 907 A.2d at 510-11 (quoting from *In re Grand Jury Subpoena*, 190 F.3d 375, 384 (5th Cir.1999)). *Accord Thirty–Third Statewide Investigating Grand Jury*, 48 A.3d at 1217-18 (Saylor, J., dissenting).

■ Obviously, this appeal arises before the Commission—or more accurately stated, the Commission's employees or individual commissioners—have been held in contempt for failure to comply with the subpoenas at issue. Nevertheless, aware of our prior cases and the countervailing concerns well-articulated in Justice Saylor's dissent, the Court has exercised its power of review here, knowing that it did not fit neatly into the paradigm described above. We do so for the following reasons. But for the concerns and complexities specific to the grand jury context, an order such as the one *sub judice*—implicating claims of privilege—would qualify as a reviewable collateral order under our emerging categorical approach. At least in the context of government agency employees facing the requirement of a contempt citation and sanction in order to vindicate claims of privilege in the grand jury context, we believe an exception to our general approach is in order, so as to resolve this particular question once and for all. *See Pennsylvania Gaming Control Bd. v. Office of Attorney General*, 615 Pa. 590, 44 A.3d 1134, 1137-38 (2011) (Castille, C.J., dissenting) (arguing that rationale for not allowing immediate collateral appeal from contempt order should not apply "where the subjects of subpoena, who have been threatened with incarceration, are public employees of a public agency arguably just trying to do their jobs").

We recognize that there is an aspect of our exercise of jurisdiction here which implicates review for reasons that have led us to invoke extraordinary review in other grand jury matters: *i.e.*, to answer an important and potentially recurring issue, in an area subject to our review if the orders were final. Our addressing the important and potentially recurring issue

of privilege in the government agency context should not be read as a categorical approval of interlocutory appeals of this sort in grand jury matters, under the traditional collateral order doctrine. The general requirement of exposure to the contempt process remains intact.

We therefore proceed to consider the merits of the appeal.

### III. Arguments

The Commission argues that it is entitled to invoke the attorney-client privilege and work product doctrine to protect communications with its in-house and outside counsel.[5] According to the Commission, the statutory evidentiary privileges codified in the Judicial Code are applicable in both criminal cases, 42 Pa.C.S. § 5916, and civil cases, *id.* § 5928, and the statutes' headings make no distinction between government or private client communications or between government or private attorneys, and thus the provisions unequivocally apply to all attorneys and all clients. The Commission argues that the supervising judge's construction of the attorney-client privilege "suborns the plain language of the statutes to the OAG's overzealous pursuit of 'unfettered access,' and improperly reads in a statutory carve-out for counsel advising government agencies." Commission's Brief at 11–12 (citing *Commonwealth, Dep't of Transp. v. Taylor*, 576 Pa. 622, 841 A.2d 108 (2004) (rejecting argument that privilege statutes may be rewritten to accomplish a perceived purpose that is at odds with plain language)). The Commission argues that had the General Assembly actually sought to make an exception to the privilege for government attorneys, it could have done so expressly in these statutes.

**5.** We refer throughout this opinion to "government lawyers," and in caselaw on the subject, the disputes often involve in-house counsel. It is clear that the Commission also engages outside counsel, and that the material subject to the grand jury subpoena here includes communications with outside counsel retained by the Commission. Judge Feudale's order denying the motion for a protective order did not distinguish between in-house or outside counsel. The parties cast their arguments here, and we consider the issues, in terms of publicly-funded lawyers, whether "outside" or "in-house," who are hired for the purpose of advising a government agency, its officials and employees, about their government-related duties.

Moreover, argues the Commission, the Right to Know Law, 65 P.S. §§ 67.101–67.3104 ("RTKL"), allows a requester to seek public records from Commonwealth agencies, *see* 65 P.S. § 67.301 (Commonwealth agency shall provide public records), but specifically excludes from production a record "protected by a privilege." 65 P.S. § 67.102. The Commission argues that there is no similar "statutory override" of the codified evidentiary privileges in the grand jury context.

In addition, the Commission argues that Pennsylvania's Civil and Criminal Rules of Procedure unequivocally supply work product protection to the products of every attorney, regardless of the attorney's or the client's "government status." Commission's Brief at 15 (citing Pa. R.C.P. 4003.3 and Pa. R.Crim. P. 573(G)).[6] Again, according to the Commission, the scope of this protection applies to the work product of attorneys of and for government agencies. Commission's Brief at 15 (citing *LaValle v. Office of Gen. Counsel,* 564 Pa. 482, 769 A.2d 449, 458 (2001) (report prepared by consultant for Department of Transportation was protected from request under former Right to Know Act as work product)). The Commission further claims that the books and papers provision of the CAA relied upon by the OAG, *see* 71 P.S. § 732–208, simply states that the OAG "shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties under this act," but its plain language does not purport to waive or otherwise limit the protections afforded by these privileges.[7] According to

6. Civil Rule 4003.3 provides that "discovery shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Criminal Rule 573(G) provides that disclosure "shall not be required of legal research or of records, correspondence, reports, or memoranda to the extent that they contain the opinions, theories, or conclusions of the attorney for the Commonwealth or the attorney for the defense, or members of their legal staffs."

7. For this argument, the Commission relies, in part, on this author's dissenting opinion in *Pa. Gaming Control Bd.,* 44 A.3d at 1140. However, that expression, filed in response to the Court's declining to entertain the petition for review in that case, simply expressed the belief that the issue of the applicability of the attorney-client and work product privileges to CAA requests in grand jury proceedings was one "of great

the Commission, since the evidentiary privileges set forth in 42 Pa.C.S. §§ 5916 and 5928 (enacted in 1976) preexisted the books and papers provision in the CAA (enacted in 1980), those privileges remain inherent in the later provision, or else the General Assembly would have expressly stated the privileges were waived through its newer enactment. The Commission also argues that the OAG's interpretation of the books and papers provision improperly "reads out" the qualifying phrase "necessary to carry out" the OAG's duties, which actually makes clear that the OAG is not entitled to every book and paper of an agency, but only a certain subset.

The Commission further argues that the supervising judge improperly determined that the reference in Section 732–208 of the CAA to "access at all times" confers on the OAG an unfettered right to possess and review all books and papers of an agency, rather than allowing the use of a privilege log as was proposed here. According to the Commission, the court also erred when it relied on Pennsylvania Rule of Professional Conduct 1.13 in deciding that the Commission and the OAG are one "client" such that the OAG could waive the attorney-client privilege for the Commission.[8] The Commission points

public importance that should be addressed by this Court." *Id.* I expressly offered no view on the merits, although I recognized that federal courts had issued differing decisions on the difficult issue. *Id.* at 1143–44. The merits issue is squarely before us now.

8. Rule of Professional Conduct 1.13 applies generally to lawyers who represent "organizations," and provides:

**Organization as Client**

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. In determining how to proceed, the lawyer shall give due consideration to the seriousness of the violation and its consequences, the scope and nature of the lawyer's representation, the responsibility in the organization and the apparent motivation of the person involved, the policies of the organization concerning such matters and any other relevant considerations. Any

out that the commentary to Rule 1.13 makes clear that its scope is limited and that the rule does not precisely define the identity of the client of government lawyers. Specifically, the Commission focuses on part of Comment 6 to Rule 1.13 which provides: "The duty defined in this Rule applies to governmental organizations. Defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these Rules." [9] The Commission argues that, as an independent agency, it is instead authorized to appoint chief counsel and assistant counsel to provide it with legal assistance if the OAG initiates litigation against it. 71 P.S. §§ 732–401, 732–402(3)(ii). And, the Commission insists, the OAG is not the "client" for purposes of waiving the Commission's privileges.

> measures taken shall be designed to minimize disruption of the organization and the risk of revealing information relating to the representation to persons outside the organization. Such measures may include among others:
> (1) asking for reconsideration of the matter;
> (2) advising that a separate legal opinion on the matter be sought for presentation to appropriate authority in the organization; and
> (3) referring the matter to higher authority in the organization, including, if warranted by the seriousness of the matter, referral to the highest authority that can act on behalf of the organization as determined by applicable law.
> (c) If, despite the lawyer's efforts in accordance with paragraph (b), the highest authority that can act on behalf of the organization insists upon action, or a refusal to act, that is clearly a violation of law and is likely to result in substantial injury to the organization, the lawyer may resign in accordance with Rule 1.16.
> (d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.
> (e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

9. The remainder of Comment 6 does not necessarily support the Commission's position, as will be discussed more fully *infra*.

Moreover, the Commission argues that the supervising judge erred when he relied on certain federal case law interpreting the Federal Rules of Evidence in its decision in favor of the OAG here. Instead, the Commission cites to various Pennsylvania cases which have upheld the attorney-client privilege and "rejected efforts to narrow its scope and application." Commission's Brief at 27 (citing *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 15 A.3d 44, 48–56 (2011)). The Commission also cites federal case law that supports its position that government officials should be encouraged to seek legal advice and enjoy the confidential communication that accompanies that attorney-client relationship, in their effort to uphold the law; the Commission argues that agency officials "must know the law in order to comply with the law." Commission's Brief at 28–29 (citing *In re: Grand Jury Investigation*, 399 F.3d 527, 534 (2d Cir.2005) ("Upholding the privilege furthers a culture in which consultation with government lawyers is accepted as a normal, desirable, and even indispensable part of conducting public business. Abrogating the privilege undermines that culture and thereby impairs the public interest.")).

Finally, the Commission argues that "any public policy concerns in the federal cases about affording evidentiary privileges to public officials are already allayed by Pennsylvania's well-recognized crime-fraud exception to privilege." Commission's Brief at 30 (citing *In re Investigating Grand Jury of Philadelphia County*, 527 Pa. 432, 593 A.2d 402, 406–07 (1991) (crime-fraud exception excludes from privilege communications made for purpose of commission of crime or fraud)). Although the Commission denies that the exception applies here, it states that its existence demonstrates that solutions exist to whatever policy problems are perceived from recognizing privileges for Commonwealth agencies; therefore, states the Commission, recognizing the attorney-client privilege in this context does not permit agencies to hide from an OAG investigation.

The Pennsylvania Bar Association and the Philadelphia Bar Association filed a joint *amicus curiae* brief in support of the

Commission's position, and in support of a broad attorney-client privilege with few exceptions. The Associations argue that denial of the privilege to government agencies and officials might deprive the government of essential legal advice, and that it is in the public's interest for high state officials to seek and act upon legal advice. The Associations insist that objective judicial oversight of subpoenas is especially important due to the political vagaries inherent in government investigations. The Associations urge this Court to overrule the lower court's "wholesale rejection of the privilege in the government agency context," and support a remand to the lower court with instructions to conduct an *in camera* review of any privilege log submitted for purposes of assessing whether the privilege applies to the documents at issue. In addition, the Pennsylvania Association of Criminal Defense Lawyers filed an *amicus* brief in support of the Commission, stating that, if the lower court's decision were to stand, a lawyer whose advice was sought by a state employee would have to advise that employee that the attorney-client privilege did not apply to their relationship, in violation of various Rules of Professional Conduct, and state and federal constitutional provisions regarding the right to counsel.

In sharp contrast, the OAG argues that the Commonwealth should indeed have unfettered access to the Commission's communications with counsel, including access to the Commission's computer hard drives and server. According to the OAG, the attorney-client privilege and work product doctrine do not protect the records of a Commonwealth agency from a grand jury subpoena. The OAG argues that application of these protections to dealings between Commonwealth agencies and a grand jury, or the OAG, would mean public entities could cloak their procedures in secrecy and evade meaningful oversight of their operations. The OAG argues that evidentiary privileges undermine the search for truth and, as such, the party asserting the privilege bears the burden of proving it is applicable. The OAG states that there are no cases where a Commonwealth agency successfully asserted the attorney-client or work product privilege in response to a grand jury

subpoena or request for records by the OAG, and it rejects the Commission's argument that it is entitled to invoke the privileges so that the Commission may foster candor with its counsel without fear of disclosure. According to the OAG, extending these privileges in this manner would harm the public interest because government lawyers have additional obligations that set them apart from privately retained counsel, including the duty to act in the public interest and rectify wrongful official acts where necessary. OAG's Brief at 8 (citing *In re Witness Before Special Grand Jury*, 288 F.3d 289 (7th Cir.2002) (in federal grand jury investigation no attorney-client privilege exists between state office holder and state government lawyer) and *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir.1997) (White House cannot invoke attorney-client privilege to withhold potentially relevant information from grand jury inquiring into relationship of President Clinton and savings and loan and land development corporations)).

The OAG further notes that the Commission's general counsel and any outside counsel retained by it are compensated by state dollars; therefore, it would be unseemly to use those funds to permit a public official to conceal from the taxpayers otherwise relevant evidence of wrongdoing. The OAG rejects the Commission's argument that the Commission stands alone as the "client" rather than the Commission as a Commonwealth agency, asserting that the Commission is obviously not an entirely independent agency answerable only to itself. In addition, the OAG argues that the comment to Professional Rule of Conduct 1.13 does indeed address the representation of government agencies such as the Commission, and states that "when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful act is prevented or rectified, for public business is involved." Pa. R. Prof. Conduct 1.13, Explanatory Comment 6. As the grand jury is inquiring into whether the Commission itself violated criminal statutes, the OAG asserts that the "client" in these circumstances—*i.e.,* for the purpose of waiving the privilege—in-

cludes those with control over the Commission, such as the General Assembly or the OAG itself. Indeed, argues the OAG, the real "client" is the Commonwealth itself.

Finally, the OAG argues that it has broad statutory authority to access the Commission's books and papers under Section 732–208 of the CAA. The OAG asserts that the Commonwealth's authority in this regard is consistent with its ability to investigate its own activities. The OAG states that it seeks communications between and among the attorneys and staff of the Commission; according to the OAG, these are clearly "books and papers," and the Commission is clearly a Commonwealth agency. The OAG also argues that the CAA specifically authorizes it to investigate and prosecute criminal charges against state officials or employees affecting the performance of their public duties. 71 P.S. §§ 732–205(a)(1), 732–206. The OAG states that the books and papers provision of the CAA does not include any exceptions for materials that might be the subject of the attorney-client or work product privileges, because such an exception would irreparably harm the OAG's ability to carry out its statutory duties of investigation and prosecution. Last, in a point following from the essential nature of an investigating grand jury, the OAG insists that it cannot provide useful search terms for the purpose of creating a privilege log without compromising the integrity of its ongoing investigation.

## IV. Discussion

We consider whether the supervising judge abused his discretion or committed an error of law when he compelled the production of the requested material from the Commission. Whether the attorney-client privilege or the work product doctrine protects a communication from disclosure is a question of law. *See Levy v. Senate of Pennsylvania,* 65 A.3d 361, 367 (Pa.2013); *Kennedy,* 876 A.2d at 943 n. 3. This Court's standard of review over questions of law is *de novo,* and the scope of review is plenary. *Levy; Kopko v. Miller,* 586 Pa. 170, 892 A.2d 766, 770 (2006); *Kennedy.* To the extent our review involves the construction of statutes, such as

the CAA invoked by the OAG, and the statutory privileges in the Judicial Code invoked by the Commission, our review likewise is plenary, with our initial focus, as always, directed to the plain language of the provisions. *Commonwealth v. Hall*, 622 Pa. 396, 80 A.3d 1204, 1211 (2013).

Generally, evidentiary privileges are not favored, as they operate "in derogation of the search for truth." *See, e.g., Commonwealth v. Stewart*, 547 Pa. 277, 690 A.2d 195, 197 (1997) (quoting *Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979)) (clergy-communicant privilege). *See also Trammel v. United States*, 445 U.S. 40, 45, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980) (spousal privilege); *Commonwealth v. Bowden*, 576 Pa. 151, 838 A.2d 740, 759 (2003) (reporters' "shield law"); *In re Subpoena No. 22*, 709 A.2d 385, 388 (Pa.Super.1998) (psychotherapist-client privilege). Nevertheless, the privileges exist where appropriate, and they serve important interests. Although the attorney-client privilege "is deeply rooted in the common law," *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 414 (1999), several statutes now define the parameters of such privileges in this Commonwealth. In both criminal and civil proceedings, the General Assembly has provided that "counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. §§ 5916 (criminal matters) and 5928 (civil matters).[10] With regard to the release of otherwise public records held by Commonwealth agencies, the RTKL contains an express exclusion for privileged documents. 65 P.S. § 67.102. Thus, the General Assembly has demonstrated, in a disclosure context, that it is able to make it clear when it intends that a privilege should apply within a particular statutory regime. *See also* 50 P.S. § 7111(a) (listing exceptions to confidentiality of mental health records; expressly protecting privileged communications); 42 Pa.C.S. § 5913

10. There is no dispute that the grand jury investigation here is a "proceeding" for purposes of the Commission's privilege claim.

(providing that spousal privilege applies except in four specific circumstances).

By contrast, the books and papers provision of the CAA broadly provides that the OAG—the chief enforcement officer demanding the documents in the case *sub judice*—"shall have the right to access at all times to the books and papers of any Commonwealth agency necessary to carry out his duties under this act." 71 P.S. § 732–208. It is undisputed that the Commission is a Commonwealth agency. 71 P.S. § 732–102 (under CAA, "Commonwealth agency" is "any executive agency or independent agency"; "independent agency" expressly includes Pennsylvania Turnpike Commission). *See also Commonwealth v. Merritt Chapman & Scott Corp.*, 432 Pa. 584, 248 A.2d 194, 196 (1968) (Turnpike Commission regarded as agency of Commonwealth); 36 P.S. § 652d (creating Commission as "an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth"). The CAA does not provide an exception for allegedly privileged material, and lists only one condition on the mandate of production: the material sought must be "necessary" for execution of the OAG's duties. We recognize that the OAG has a broad array of duties involving Commonwealth agencies beyond criminal investigations, and that the CAA is of correspondingly broad scope. Nevertheless the authorization remains qualified only by what is "necessary." In this case, the OAG's duties involve grand jury proceedings. In the context of the grand jury investigation, the OAG has issued subpoenas for the books and papers of the Commission, which is a Commonwealth agency.

The attorney-client privilege is intended to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client. *Chmiel*, 738 A.2d at 425. *See also Levy*, 65 A.3d at 371 (purpose of privilege is to encourage clients to provide information freely to their attorneys so attorneys can give sound and informed advice). The central

principle is that a client may be reluctant to disclose to his lawyer all facts necessary to obtain informed legal advice, if the communication may later be exposed to public scrutiny. *Chmiel*, 738 A.2d at 425. "Recognizing that its purpose is to create an atmosphere that will encourage confidence and dialogue between attorney and client, the privilege is founded upon a policy extrinsic to the protection of the fact-finding process. The intended beneficiary of this policy is not the individual client so much as the systematic administration of justice which depends on frank and open client-attorney communication." *Investigating Grand Jury of Philadelphia County*, 593 A.2d at 406 (internal citations omitted).

This Court recently reaffirmed the value of the privilege, albeit under very different circumstances, in *Gillard v. AIG*, 15 A.3d 44; *Gillard* did not arise out of grand jury proceedings and it did not involve government lawyers. The *Gillard* Court considered whether the attorney-client privilege applied to attorney-to-client communications, which were sought during discovery related to a bad faith claim against an insurer. In holding that the privilege does extend to such communications made for the purpose of providing professional advice, the Court nevertheless recognized the "ongoing tension between the two strong, competing interests-of-justice factors in play—namely—the encouragement of trust and candid communication between lawyers and their clients, ... and the accessibility of material evidence to further the truth-determining process." *Id.* at 57 (citation omitted). *See also Levy*, 65 A.3d at 368 (attorney-client privilege is often in tension with truth-determining process).

As a result of this tension, courts have recognized exceptions to the attorney-client privilege. For example, if the legal advice sought from counsel is for the purpose of committing a crime, the attorney-client privilege does not apply. *See, e.g., Investigating Grand Jury of Philadelphia County*, 593 A.2d at 406 (attorney-client privilege does not protect communications made for purpose or in course of commission of proposed crime or fraud); *Nadler v. Warner Co.*, 321 Pa. 139, 184 A. 3, 5 (1936) ("When the advice of counsel is sought in aid of the

commission of crime or fraud, the communications are not 'confidential' within the meaning of the statute and may be elicited from the client or the attorney on the witness stand."); *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir.1994) (communications between client and attorney are protected from disclosure but not if communication was made for purpose of committing crime or tort). The Court has trenchantly recognized that no court should "permit it to be said that the contriving of a fraud can form part of the professional occupation of an attorney or solicitor." *Nadler*, 184 A. at 5 (quoting *Follett v. Jefferyes*, 1 Sim. (N.S.) 1, 61 Eng. Rep. 1 (1850)).

Pennsylvania Rule of Professional Conduct 1.6, which generally mandates that information revealed by a client to his or her lawyer remain confidential, likewise recognizes that competing concerns and obligations require exceptions. As relevant here, the rule provides:

b) A lawyer shall reveal such information if necessary to comply with the duties stated in Rule 3.3 [relating to candor toward a tribunal].

(c) A lawyer may reveal such information to the extent that the lawyer reasonably believes necessary:

\* \* \*

(2) to prevent the client from committing a criminal act that the lawyer believes is likely to result in substantial injury to the financial interests or property of another;

(3) to prevent, mitigate or rectify the consequences of a client's criminal or fraudulent act in the commission of which the lawyer's services are being or had been used; or

(4) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim or disciplinary proceeding against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client. . . .

Pa. R. Prof. Conduct 1.6. *See also* Pa. R. Prof. Conduct 1.2(d) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.").

■ Thus, it is clear that an attorney's oath of office and ethical responsibilities require fidelity to the court and the greater interests of justice, as well as to the client. Thus, a "lawyer's fidelity to the client does not extend to aiding and abetting a client in criminal activities, ... nor can the client have a legitimate expectation of such confidences." *Commonwealth v. Maguigan*, 511 Pa. 112, 511 A.2d 1327, 1335–36 (1986) (citations omitted) (attorney-client privilege did not preclude counsel from revealing possible whereabouts of defendant who absconded while on bail and failed to appear for trial). *See generally* 42 Pa.C.S. § 2522 ("Before entering upon the duties of his office, each attorney at law shall take and subscribe the following oath or affirmation before a person authorized to administer oaths: 'I do solemnly swear (or affirm) that I will support, obey and defend the Constitution of the United States and the Constitution of this Commonwealth and that I will discharge the duties of my office with fidelity, as well as to the court as to the client, that I will use no falsehood, nor delay the cause of any person for lucre or malice.' Any person refusing to take the oath or affirmation shall forfeit his office.").[11]

11. The Commission makes a tenuous argument that the existence of a crime-fraud exception should allay any public policy concerns about affording evidentiary privileges to public officials and employees in this context, because, when the privilege is invoked over "materials that may fit the crime-fraud exception," the party seeking the materials need only make a *prima facie* showing that the exception has been met. Commission's Brief at 30 (citing *Brennan v. Brennan*, 281 Pa.Super. 362, 422 A.2d 510 (1980) and *In re Application of Chevron Corp.*, 633 F.3d 153 (3d Cir.2011)). But, this argument begs the question of how the party seeking materials would know that particular items "might fit the crime-fraud exception." Notably, in this case, the supervising judge determined that the mechanism proposed by the Commission—a privilege log with OAG-provided search terms—would unduly compromise

Keeping in mind these well-established limitations on the attorney-client privilege, borne of competing but lofty concerns, we must consider the special circumstances of this case: the Commission—a constituent part of the Commonwealth, a Commonwealth agency—claims that it may invoke the privilege in order to avoid disclosure to the OAG and a grand jury (rather than to the public at large) of communications to its lawyers, related to its publicly-funded operation on behalf of the Commonwealth's citizens. We have not previously been squarely presented with this question, but the governing principles, rules and caselaw, as well as relevant federal decisions, make it clear that our holding should be shaped by the unique role of government lawyers who advise public officials and agency employees, who in turn find themselves subject to grand jury investigations. These facts present a unique context for considering the application of the attorney-client privilege, which we have stated is designed to foster candid communications between counsel and client—so that counsel can give legal advice based upon the most complete information—without creating a situation where the client might be reluctant to disclose all the necessary facts because the communication might later be made public. *See, e.g., Chmiel*, 738 A.2d at 425. The difficulty presented here is sensitive because the public deserves sound, legally supported decision-making by its public officials and agency employees, but, in the context of investigative grand juries at least, the public also deserves to know the information that these public servants considered relevant to their decision-making process.

Pennsylvania's Rule of Professional Conduct 1.13, *see* footnote 8, *supra*, applies generally to lawyers who represent organizations as clients, and includes an explanatory comment specifically related to governmental organizations that acknowledges the special duties and responsibilities of government lawyers:

> the ongoing grand jury investigation into possible criminal activity involving the Commission and related third parties. A prosecuting officer charged with investigating crime is not obliged to tip his hand to those under investigation; thus, in light of the nature of an investigative grand jury, the supervising judge's point is well taken.

The duty defined in this Rule applies to governmental organizations. Defining precisely the identity of the client and prescribing the resulting obligations of such lawyers may be more difficult in the government context and is a matter beyond the scope of these Rules. *See* Scope [17].[12] Although in some circumstances the client may be a specific agency, it may also be a branch of government, such as the executive branch, or the government as a whole. For example, if the action or failure to act involves the head of a bureau, either the department of which the bureau is a part or the relevant branch of government may be the client for purposes of this Rule. Moreover, in a matter involving the conduct of government officials, a government lawyer may have authority under applicable law to question such conduct more extensively than that of a lawyer for a private organization in similar circumstances. **Thus, when the client is a governmental organization, a different balance may be appropriate between maintaining confidentiality and assuring that the wrongful act is prevented or rectified, for public business is involved.** In addition, duties of lawyers employed by the government or lawyers in military service may be defined by statutes and regulation. This Rule does not limit that authority.

Pa. R. Prof. Conduct 1.13, Explanatory Comment 6 (footnote and emphasis added). In this way, the Rules acknowledge that the attorney-client privilege must be analyzed differently

12. The Scope of the Rules of Professional Conduct provides, in relevant part: "[17] Under various legal provisions, including constitutional, statutory and common law, the **responsibilities of government lawyers may include authority concerning legal matters that ordinarily reposes in the client in private client-lawyer relationships.** For example, a lawyer for a government agency may have authority on behalf of the government to decide upon settlement or whether to appeal from an adverse judgment. **Such authority in various respects is generally vested in the attorney general and the state's attorney in state government,** and their federal counterparts, and the same may be true of other government law officers. Also, lawyers under the supervision of these officers may be authorized to represent several government agencies in intragovernmental legal controversies in circumstances where a private lawyer could not represent multiple private clients. These Rules do not abrogate any such authority." 42 Pa.C.S., Rules of Prof. Conduct, Preamble and Scope (emphasis added).

in the government context than in the private sector. *See also* RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 74 cmt. b (although attorney-client privilege extends to communication with governmental organization as client, "narrower privilege for governmental clients may be warranted by particular statutory formulations. Open-meeting and open-files statutes reflect a public policy against secrecy in many areas of governmental activity. Moreover, unlike persons in private life, a public agency or employee has no autonomous right of confidentiality in communications relating to governmental business."); Nancy Leong, *Attorney–Client Privilege in the Public Sector: A Survey of Government Attorneys*, 20 GEORGETOWN J. OF LEGAL ETHICS 163 (2007) (suggesting paramount responsibility of government attorney is to work for public interest; it is with public-spirited values of governmental transparency and openness that courts should attempt to craft suitable tailoring of attorney-client privilege).

In granting the OAG's motion to compel and denying the Commission's motion for protective order, Judge Feudale relied in part on federal cases that draw the same, salient distinction. In *Grand Jury Subpoena Duces Tecum, supra,* the U.S. Court of Appeals for the Eighth Circuit considered whether "an entity of the federal government may use the attorney-client privilege to avoid complying with a subpoena by a federal grand jury," which was conducting a criminal investigation into matters related to, *inter alia,* Whitewater Development Corporation, and the relationship of then-President Clinton and Hillary Rodham Clinton to Whitewater. 112 F.3d at 915. The Office of Independent Counsel filed a motion to compel the production of documents from the White House, which the district court denied, but the decision was reversed on appeal and the privilege was held not to apply. Although based on federal rules and common law, the Eighth Circuit's discussion of the parameters of the attorney-client privilege is useful here. The court recognized that a prosecutor could not compel the notes made by a private lawyer about a conversation with a private client about private matters. However, the court stressed, documents created by White House lawyers

implicate "the general duty of public service [that] calls upon government employees and agencies to favor disclosure over concealment." *Id.* at 919–20.

> We believe the strong public interest in honest government and in exposing wrongdoing by public officials would be ill-served by recognition of a governmental attorney-client privilege applicable in criminal proceedings inquiring into the actions of public officials. We also believe that to allow any part of the federal government to use its in-house attorneys as a shield against the production of information relevant to a federal criminal investigation would represent a gross misuse of public assets.... Because agencies and entities of the government are not themselves subject to criminal liability, a government attorney is free to discuss anything with a government official—except for potential criminal wrongdoing by that official—without fearing later revelation of the conversation. An official who fears he or she may have violated the criminal law and wishes to speak with an attorney in confidence should speak with a private attorney, not a government attorney.

*Id.* at 921. The court also concluded that the work product doctrine was not available to the White House under the circumstances. *Id.* at 925–26. *See also United States v. Arthur Young & Co.,* 465 U.S. 805, 817, 104 S.Ct. 1495, 79 L.Ed.2d 826 (1984) (recognizing distinction between private attorney and independent certified public accountant who certifies public reports that depict a corporation's financial status and thus assumes public responsibility "transcending any employment relationship with the client").

In related litigation, the D.C. Circuit Court of Appeals considered the question of whether an attorney in the Office of the President, Deputy White House Counsel and Assistant to the President, Bruce R. Lindsey, having been called before a federal grand jury, could refuse, on the basis of a government attorney-client privilege, to answer questions about possible criminal conduct by government officials and others. *In re Lindsey,* 158 F.3d 1263 (D.C.Cir.1998). "With respect to investigations of federal criminal offenses, and especially of-

fenses committed by those in government, government attorneys stand in a far different position from members of the private bar. Their duty is not to defend clients against criminal charges and it is not to protect wrongdoers from public exposure. . . . Unlike a private practitioner, the loyalties of a government lawyer therefore cannot and must not lie solely with his or her client agency." *Id.* at 1272–73. The court rejected the contrary argument that such communications with government lawyers must be protected because government officials "need accurate advice from government attorneys as much as private individuals do," and would thus be chilled in their ability to discuss legal problems honestly unless they know the discussions are confidential. *Id.* at 1276. The court concluded instead that, when "government attorneys learn, through communications with their clients, of information related to criminal misconduct, they may not rely on the government attorney-client privilege to shield such information from disclosure to a grand jury." [13] *Id.* at 1278. *See also* Lory A. Barsdate, Note, *Attorney–Client Privilege for the Government Entity*, 97 YALE L.J. 1725, 1744 (1988) ("An absolute privilege for attorney-client communications in the government context compromises both the logic of the evidentiary privilege and the important public policy of openness in government affairs. Limitation of the attorney-client privilege in the government context would preserve the absolute privilege for circumstances in which it would promote attorney-client communications and aid in the administration of justice.").

We find persuasive other federal decisions that have similarly concluded the attorney-client privilege does not apply in

13. The court acknowledged that the President's communications with counsel might be protected by executive privilege, or that the President's communications in his personal capacity with his personal counsel, or through an intermediary, might indeed be privileged. *Lindsey*, 158 F.3d at 1278–82. This distinction is analogous here, where individual commissioners, or other agency employees, who had personally retained their own private counsel—with their own funds—for advice as to their own personal liability or criminal responsibility, might enjoy the benefit of the privilege. No question concerning that scenario is presented here, and we offer no view upon the subject.

this particular context—where the "client" is actually the state government or its agency—as it normally applies in the private sector. During a federal criminal investigation into corruption in the Illinois Secretary of State's office, a state government lawyer, Roger Bickel, Chief Counsel to then-Secretary of State George Ryan, was faced with a grand jury subpoena seeking disclosure of communications between himself and the Secretary; the Seventh Circuit held that the attorney-client privilege did not protect those communications. *Witness Before the Special Grand Jury*, 288 F.3d at 294. The court recognized that it is a "special case" when the attorney's client is actually not a private individual or a corporation, but rather "the State of Illinois itself, represented through one of its agencies." *Id.* at 291. The court rejected arguments that without privileged discussion between public officials and government lawyers, officials might be unable to carry out policy objectives, or there might be more legal violations and corruption in public office, or that absent such protection, citizens might be unwilling to serve in public office at all. Writing for herself, Chief Judge Flaum, and Judge Posner, Circuit Judge (now Chief Judge) Diane P. Wood reasoned:

> While we recognize the need for full and frank communication between government officials, we are more persuaded by the serious arguments against extending the attorney-client privilege to protect communications between government lawyers and the public officials they serve when criminal proceedings are at issue. First, government lawyers have responsibilities and obligations different from those facing members of the private bar. While the latter are appropriately concerned first and foremost with protecting their clients—even those engaged in wrongdoing—from criminal charges and public exposure, government lawyers have a higher, competing duty to act in the public interest. *Lindsey*, 158 F.3d at 1273; Comment to ABA Model Rule 1.13 (noting that government lawyers may have higher duty to rectify wrongful official acts despite general rule of confidentiality). They take an oath, separate from their bar oath, to uphold the United States Constitution and the laws

of this nation (and usually the laws of the state they serve when, as was the case with [Chief Legal Counsel Roger] Bickel, they are state employees). Their compensation comes not from a client whose interests they are sworn to protect from the power of the state, but from the state itself and the public fisc. It would be both unseemly and a misuse of public assets to permit a public official to use a taxpayer-provided attorney to conceal from the taxpayers themselves otherwise admissible evidence of financial wrongdoing, official misconduct, or abuse of power. *Compare [United States v.] Nixon*, 418 U.S. [683] at 713, 94 S.Ct. 3090 [41 L.Ed.2d 1039 (1974)] (qualified executive privilege applies in the face of a criminal investigation). Therefore, when another government lawyer requires information as part of a criminal investigation, the public lawyer is obligated not to protect his governmental client but to ensure its compliance with the law.

*Id.* at 293 (footnote and parallel citation omitted).

The Seventh Circuit also recognized another important difference between a government lawyer's clients and those of private sector, privately-funded, personal attorneys. "Individuals and corporations are both subject to criminal liability for their transgressions.... A state agency, however, cannot be held criminally liable by either the state itself or the federal government. There is thus no need to offer the attorney-client privilege as an incentive to increase compliance with the laws. True, individual state employees can be held liable, and many have been found guilty of crimes in this very investigation. But the privilege with which we are concerned today runs to the office, not to the employees in that office." *Id.* at 293–94 (citations omitted).[14]

14. We are aware that another federal appeals court has a different view of the issue. *See, e.g., Grand Jury Investigation*, 399 F.3d 527. During an investigation of the Office of the Governor of Connecticut regarding receipt of gifts, the federal grand jury issued a subpoena to the governor's chief legal counsel, who asserted the attorney-client privilege. The Second Circuit rejected the claim that the attorney-client privilege in the government context is somehow "weaker than in its traditional form," *id.* at 533, and reversed the district court's order compelling counsel's testimony. The Second Circuit relied on federal rules and

This Court has also recognized that the attorney-client privilege runs to the benefit of the client, *see, e.g., Castellani v. Scranton Times, L.P.,* 598 Pa. 283, 956 A.2d 937, 951 (2008). However, in the circumstances of the instant case, the "client" is not simply the agency or the individual employees of the agency, or the public officials themselves, but rather the public, whose money funds their operations, and whom all of these individuals serve. We recognize that the privilege has been held to protect communications between an agency and its lawyers in different circumstances, such as when the Commonwealth agency is involved in civil litigation with non-Commonwealth entities, for the benefit of the Commonwealth itself. *See, e.g., Ario v. Deloitte & Touche LLP,* 934 A.2d 1290, 1294 (Pa.Cmwlth.2007) (where insurance commissioner, as liquidator, sued insurer's accounting firm, defendant was not entitled to review privileged communications between commissioner and general counsel); *Sedat, Inc. v. Dep't of Envtl. Res.,* 163 Pa.Cmwlth. 29, 641 A.2d 1243, 1245 (1994) (memoranda prepared by agency attorney in ·response to agency administrator's request for legal advice were privileged

common law, but also considered a specific provision of Connecticut law that upholds the privilege in the government context:

We cannot accept the Government's unequivocal assumption as to where the public interest lies. To be sure, it is in the public interest for the grand jury to collect all the relevant evidence it can. However, it is also in the public interest for high state officials to receive and act upon the best possible legal advice. Indeed, the people of Connecticut have deemed the latter interest more important than the former: if state prosecutors had sought to compel George to reveal the conversations at issue, there is little doubt that the conversations would be protected. The Connecticut legislature has enacted a statute specifically providing that "[i]n any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure." Conn. Gen.Stat. § 52–146r(b). The people of Connecticut, then, acting through their representatives, have concluded that the public interest is advanced by upholding a governmental privilege even in the face of a criminal investigation. 399 F.3d at 534. Although Sections 5916 and 5928 of the Judicial Code codify the privilege in criminal and civil cases, there is no corresponding statute in Pennsylvania that specifically refers to government lawyers and that authorizes the protection that is afforded in Connecticut.

and not subject to disclosure to petitioners seeking mining permit). *See also Levy,* 65 A.3d at 372 (applying attorney-client privilege to protect certain public records from disclosure to reporter under RTKL); *Dages v. Carbon County,* 44 A.3d 89, 93 (Pa.Cmwlth.2012) (legal research performed on behalf of county regarding county economic development project was not public record subject to disclosure under RTKL at request of project's opponent). In such cases, it makes sense to protect the Commonwealth—to, in effect, "close ranks" **on behalf of the public**—against the state's opponents or potential opponents. *See, e.g., Levy,* 65 A.3d at 382 (acknowledging legislative intent behind RTKL to shield some items from disclosure in order to protect Commonwealth's own security interests and individuals' privacy).

██ But, where the agency itself, its employees and officials, are being investigated by the Commonwealth itself, in grand jury proceedings, through the office of the chief enforcement officer of the Commonwealth, due to suspicion of wrongdoing, it is crucial to be mindful that the actual client of the agency's lawyers in such circumstances is the public. It follows that the only proper manner of considering the privilege in these circumstances is that the client-citizenry has impliedly waived the attorney-client privilege that might otherwise shield from revelation evidence of corruption and criminal activity. To hold that the Commission itself is the client entitled to claim the privilege in the face of a duly-authorized grand jury investigation by the Commonwealth government is tantamount to concluding that the Commission is independent of the Commonwealth government, is beholden only to itself and, although the Commission is ultimately funded by the public through a variety of means established by the General Assembly, the Commission need not account for its expenditures and operations to the Commonwealth's citizens, who are represented, in this instance, by the OAG. In our view, this position obviously cannot prevail; thus, we hold that the supervising judge did not err in determining that the attorney-client privilege does not preclude the production of the

documents sought by the OAG, nor does it entitle the Commission to the privilege log screening process it proposed.[15]

We stress, once again, that we recognize that the OAG has many duties besides criminal investigations, and the broad books and papers authorization in the CAA respecting Commonwealth agencies does not speak narrowly to the OAG's investigative powers. Nevertheless, by its plain and broad language, the unqualified (except for the "necessary" proviso) power conferred is not made subject to an exception for the attorney-client privilege. As our discussion above should make clear, there are sound reasons, consistent with the purposes and limitations of the attorney-client privilege, why the General Assembly properly would not authorize such an exception. Under these circumstances, the supervising judge properly rejected the assertion of privilege.

■ Our rationale regarding the attorney-client privilege and its inapplicability to communications between the Commission and its counsel, within the context of grand jury proceedings, applies with equal force to the Commission's claim of protection under the attorney work product doctrine; the two concepts are closely related. *See generally* Pa. R. Prof. Conduct 1.6, Explanatory Comment 3 ("The principle of client-lawyer confidentiality is given effect by related bodies of law: the attorney-client privilege, the work product doctrine and the rule of confidentiality established in professional ethics.

15. Both the supervising judge below, and the OAG in its arguments to this Court, refer to an additional basis for finding the privilege "waived" and inapplicable here. First, they assert that because the General Assembly and the OAG itself are Commonwealth entities—just as the Commission is a Commonwealth entity—they are the same "client" for purposes of waiving any attorney-client privilege. *See, e.g.,* Pa. R. Prof. Conduct 1.13, Explanatory Comment 6 ("Although in some circumstances the client may be a specific agency, it may also be a branch of government, such as the executive branch, or the government as a whole...."). Second, the supervising judge determined that the General Assembly effectively waived the attorney-client privilege for agencies under the OAG's supervision when the OAG conducts grand jury investigations into agency business, by its choice of language in the books and papers provision of the CAA, which does not include any restrictions to access on the basis of a privilege. We need not reach or consider the viability of these additional reasons for holding the attorney-client privilege does not apply.

The attorney-client privilege and work product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.").

Under Pennsylvania's Rules of Civil Procedure, the work product doctrine provides that a party may obtain discovery of material prepared in anticipation of litigation or trial by a party's attorney, but discovery "shall not include disclosure of the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." Pa. R.C.P. 4003.3. We have held that, to the extent material constitutes an agency's work product, it is not subject to compulsory public disclosure pursuant to the RTKL. *See, e.g., LaValle,* 769 A.2d at 459 (Pennsylvania senators sought access under former Right to Know Act to report prepared by accounting firm for PennDOT during course of litigation against that agency by contractor); *City of Pittsburgh v. Silver,* 50 A.3d 296, 301 (Pa.Cmwlth.2012) (Office of Open Records was without authority to compel disclosure of information in attorney's case file related to litigation, including settlement negotiations).[16]

16. Although the majority opinion by Mr. Justice Saylor in *LaValle* did not specifically adopt a "deliberative process privilege" to support its holding in addition to the work product doctrine, it did recognize that many jurisdictions view the work product doctrine as a "subset of a broader group of principles concerned not merely with protecting deliberative processes associated with litigation, but with insulating administrative agency deliberative processes generally," and "supported by policies concerned with facilitation of full and free communication and exchange in agency operations and practice." *LaValle,* 769 A.2d at 457 (quoting from *Commonwealth v. Vartan,* 557 Pa. 390, 733 A.2d 1258, 1264 (1999) (plurality) ("The deliberative process privilege benefits the public, and not the officials who assert the privilege. The purpose for the privilege is to allow the free exchange of ideas and

But, as we have already discussed *supra,* the RTKL provides as an express exception from its definition of accessible public records those records which are protected by a privilege, so that cases decided under that statute are inapt. 65 P.S. § 67.102. Moreover, the case *sub judice* does not involve a RTKL request, but rather a grand jury subpoena issued by the OAG to a Commonwealth agency seeking discovery of communications related to an investigation into the operations of that Commonwealth agency, pursuant to the CAA books and papers provision. As stated, the only limitation on production under Section 732–208 is that the Commonwealth agency's books and papers be "necessary" for the OAG to carry out its duties under the CAA; and that limitation is not at issue. Finally, the supervising judge found no factual support for the claim that the material requested is protected work product; he stated that there had been no showing that the material represents the mental impressions of a party's attorney or his conclusions, opinions, memoranda, notes or summaries, or legal research and theories.

In this case, the OAG apparently is conducting a grand jury investigation into possible criminal violations by the Commission, its employees, and others having business with the Commission. The CAA specifically authorizes the OAG to investigate and prosecute criminal charges against Commonwealth officials or employees "affecting the performance of their public duties or the maintenance of the public trust" and "persons attempting to influence" those officials and employees. 71 P.S. §§ 732–205(a)(1), 732–206. The OAG contends that the material sought is necessary for its investigation, and

information within government agencies. The privilege recognizes that if governmental agencies were 'forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.' ")). *See also La-Valle,* 769 A.2d at 461 (Cappy, C.J., concurring) (would expressly adopt deliberative process privilege because expanding scope of former Right to Know Act to reach documents related to internal deliberative process of agency would have "deleterious effect on the candor necessary for an agency to arrive at reasoned decisions. Because of this chilling effect on the free exchange of ideas, the ultimate conclusions drawn by the agency would not be as well informed."). The deliberative process privilege is not involved in this case.

that a privilege log—based on search terms provided by the OAG—would compromise the integrity of that ongoing investigation. The supervising judge, after an *in camera* review of an offer of proof, agreed that the Commission's proposed solution would significantly compromise the grand jury's investigation.[17] Accordingly, we find no error in the supervising judge's determination that the requested production is necessary as required under the books and papers provision of the CAA; we have not extended work product protection to a request under that statute, and we remain unpersuaded that the doctrine should apply given the circumstances of this case.

**Conclusion**

We hold that the attorney-client privilege and work product doctrine do not apply to preclude the OAG's access to the documents it has requested pursuant to the grand jury subpoenas issued in this case. We affirm the order of the supervising judge denying the Commission's motion for protective order.

Order affirmed.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justice EAKIN and BAER, Justice TODD and Justice McCAFFERY join the opinion.

17. The Commission avers that there are "other solutions" to this problem, for example, the OAG could itself "run search terms" over the electronic data, without disclosing those search terms to the Commission, and then the Commission could review the results for privilege and produce a privilege log, which may again be presented for *in camera* review. Commission's Brief at 31 n. 19. The Commission's *amici*, the Philadelphia and Pennsylvania Bar Associations, likewise advocate for a process involving some degree of court review in advance of disclosure. We have no record evidence with which to assess the technological or practical viability of the Commission's hypothetical solution, or whether it was ever suggested to the court below. In any event, given our discussion above, there is no basis in law to impose these external qualifications upon the OAG's right of access in this context, involving a Commonwealth agency.

Justice SAYLOR files a concurring opinion.

Justice BAER files a concurring opinion in which Justice TODD joins.

Justice SAYLOR, concurring.

I join Parts I, III, and IV of the majority opinion, as well as the result.

As to Part II, concerning appellate jurisdiction, I remain with my position as set forth in my statement dissenting to the Order granting the Turnpike Commission's petition for review. *See In re Thirty–Third Statewide Investigating Grand Jury*, 616 Pa. 414, 414–16, 48 A.3d 1217, 1217–18 (2012) (Saylor, J., dissenting). In particular, I still am not aligned with the notion that public employees should be treated differently from those in private ventures, such as newspaper reporters, relative to the availability of interlocutory appellate review of a directive to produce documents for review in investigating grand jury proceedings and/or the refusal of a supervising judge to issue a protective order. Majority Opinion, at 371, 86 A.3d at 210 (quoting *Pa. Gaming Control Bd. v. OAG*, 615 Pa. 590, 596, 44 A.3d 1134, 1137–38 (2011) (Castille, C.J., dissenting)). *See generally In re Thirty–Third Statewide Investigating Grand Jury*, 616 Pa. at 416, 48 A.3d at 1218 (Saylor, J., dissenting) ("For my part, I am uncomfortable saying that the very important confidentiality and privilege concerns of the newspaper organization at stake in [another grand jury investigation], for example, are any less important than those of the Commonwealth agency seeking to invoke collateral order review here.").[1] In either event, I believe, the practice of limiting appeals to those from contempt orders is corollary to the strong public policy of fostering expeditious, confidential grand jury investigations and to the interest in developing adequate factual records. *See In re Twenty–Fourth Statewide Investigating Grand Jury*, 589 Pa. 89, 97–98, 907 A.2d

1. My perspective, in this regard, is with due consideration for the important role of a "vigorous free press" in a democratic society. *In re Dauphin County Fourth Investigating Grand Jury*, 610 Pa. 296, 327 n. 6, 19 A.3d 491, 509 n. 6 (2011).

505, 509–10 (2006). To the extent the vindication of such aims require consequence-laden risks on the part of those wishing to resist grand jury subpoenas, I do not see a compelling basis for differential treatment of public versus private employees relative to the ramifications of their refusals.

Moreover, as the majority recognizes, the Turnpike Commission's position that its attorneys are not beholden to the public as their client "obviously cannot prevail," Majority Opinion, at 393, 86 A.3d at 224, and could not prevail from the outset. As such, in my view any peril which would have been suffered by the Commission's employees or individual commissioners as a result of withholding documents from the Attorney General in connection with the investigating grand jury proceedings simply would not have been a sensible risk in the first instance.

Justice BAER, concurring.

I join the majority opinion in this case of first impression—and agree that communications between a state agency and its counsel are not protected by the attorney-client privilege where the state agency is the subject of a grand jury investigation conducted by the Office of the Attorney General ("OAG"). I write separately, however, to emphasize, in my view, the limited nature of the majority's holding, and to caution state agencies and their officials to be cognizant of when the attorney-client privilege may be encroached.

It is well-established that the attorney-client privilege and the protection it provides to confidential communications are entrenched in Pennsylvania jurisprudence. *See Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 414 (1999) (citations omitted) (acknowledging that "[a]lthough now embodied in statute, the attorney-client privilege is deeply rooted in the common law. Indeed, it is the most revered of the common law privileges"). The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Levy v. Senate of Pa.*, 619 Pa. 586, 65 A.3d 361, 368 (2013) (citing *Gillard v. AIG Ins. Co.*, 609 Pa. 65, 15 A.3d

44, 47 n. 1 (2011)). This Court has been reluctant to carve exceptions to the attorney-client privilege, as codified in 42 Pa.C.S. § 5916.[1] *See Gillard,* 15 A.3d at 59 (holding that, "in Pennsylvania, the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice").

Nevertheless, after great deliberation, and upon consideration of the tension between the competing interests of justice in play (*i.e.,* the encouragement of trust and candid communications between lawyers and their clients and the accessibility of material evidence to further the truth determining process, *Gillard,* 15 A.3d at 57), I am persuaded that the majority's legal analysis is sound. I agree that under the particular facts presented, the attorney-client privilege of the Pennsylvania Turnpike Commission ("Commission") succumbs to the OAG's statutory obligations under the Commonwealth Attorney's Act ("CAA") to investigate criminal offenses that it has the power to prosecute, 71 P.S. § 732–206(a), to convene investigating grand juries, *id.* at § 732–206(b), and to exercise its statutory right to access a Commonwealth agency's books and papers, which are necessary for the OAG to carry out its duties, *id.* at § 732–208.

As noted cogently by the majority, the General Assembly has demonstrated its ability to protect privileged information by employing, in other statutes, express language excluding privileged materials from compelled disclosure. *See* Op. at 380–81, 86 A.3d at 216 (referencing, *inter alia,* 65 P.S. § 67.102, which defines accessible public records under the Right to Know Law as excluding privileged materials). In contrast, when enacting the CAA, the Legislature did not see fit to exclude from the OAG's access the books and papers of state agencies that are protected by the attorney-client privilege. Op. at 380–81, 86 A.3d at 216. Further, I agree with

1. Section 5916 provides that "counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5916.

the majority that to adopt the Commission's position as the rule of law of this Commonwealth would essentially be concluding that state agencies are independent of the Commonwealth's government, and need not be accountable for their expenditures of public funds or their manner of operating the public agency. *Id.* at 392–93, 86 A.3d at 223–24.

That being said, however, I am compelled to emphasize what I view as the narrow scope of the holding in this case. The majority opinion appears to recognize that the Court's intrusion upon the attorney-client privilege in the instant case is limited to the facts presented. *See* Op. at 384–85, 86 A.3d at 218–19 (emphasizing the "special circumstances of this case" where a Commonwealth agency seeks to assert the attorney-client privilege to avoid disclosure to the OAG and a grand jury of communications it made to the agency's attorney in the course of operating the publicly-funded agency); *id.* at 392–93, 86 A.3d at 223–24 (distinguishing the instant facts from cases where the attorney-client privilege protects communications between a state agency and its counsel when the agency is involved in civil litigation with non-Commonwealth agencies).

Similarly, the supervising judge articulated the limited nature of the restriction on the privilege, noting that the court's decision was limited to the facts before it. *In re Thirty–Third Statewide Investigating Grand Jury*, Dauphin County Common Pleas Court, No. 1325 M.D. 2010, dated April 24, 2012, at 13, 2012 WL 8880959. The supervising judge stated: "The Court stresses that attorney-client privilege unquestionably remains in the private sector between private counsel who represent employees of executive administrative agencies in their personal or official capacities as well as in those actions initiated against executive administrative agencies by parties other than the OAG. The Court's decision in no way erodes this time-honored privilege in any other circumstance." *Id.* at 13–14. I share these sentiments.

State agencies and their officials should be cognizant that communications with counsel implicating criminal wrongdoing may be discoverable if the agency later becomes the subject of a criminal grand jury investigation initiated by the OAG. This should not compromise the ability of the agency to engage in

frank discussions with government counsel to promote public interests in accordance with the law because ["a]n official who fears he or she may have violated the criminal law and wishes to speak to an attorney in confidence should speak with a private attorney, not a government attorney." Op. at 388, 86 A.3d at 220 (citing *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 921 (8th Cir.1997)). Thus, the majority's holding respects the sanctity of the attorney-client privilege where appropriate, while ensuring that state agencies and their officials cannot shroud criminal conduct from the citizens they are obligated to serve.

Justice TODD joins the Concurring Opinion.