# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

COMMONWEALTH OF PENNSYLVANIA : No. 108 MM 2014

        v.

JEFFREY SUZENSKI, MITCHELL RUBIN,
JOSEPH BRIMMEIER, ROBERT J.
MELLOW, GEORGE HATALOWICH,
DENNIS MILLER,


PETITION OF:   PENNSYLVANIA
TURNPIKE COMMISSION

## CONCURRING STATEMENT

**MR. CHIEF JUSTICE CASTILLE**                    **FILED:   August 11, 2014**

The Court today grants in part the Emergency Application of the Pennsylvania Turnpike Commission (the "Commission") to Enforce Supersedeas or, in the Alternative, for Partial Stay of Trial Court Order Pending Appeal, and I join in that decision.   I write separately to briefly explain my reasons for granting relief.

The Commission seeks emergency relief from orders of the Court of Common Pleas of Dauphin County and the Superior Court which effectively allow the production of allegedly confidential and privileged material sought in discovery requests served upon the Office of Attorney General (the "OAG") in these criminal cases, scheduled to go to trial on August 18, 2014.   The material consists of approximately 12 terabytes of data, estimated to include 30 million documents, copied from Commission hard drives and

servers by the OAG during a grand jury investigation that ultimately resulted in criminal charges against the various defendants. The trial court denied the Commission's motion for a protective order, and upon the Commission's appeal to the Superior Court, denied the Commission's motion for a stay pending appeal. The Superior Court initially granted a stay, but then vacated its own stay on July 14, 2014, without explanation, and scheduled briefing in the matter, with the initial brief due in Superior Court on July 29, 2014.

In its application to this Court, the Commission seeks a directive that the OAG, pending resolution of the Commission's appeal, produce only redacted material from the copied drives and servers to the defendants, and only after the material has first been reviewed by the OAG and determined to be relevant to the pending prosecutions, and not private, confidential or otherwise legally privileged;[1] the Commission further requests

---

[1] According to the Commission, the subject material includes:

> a. Full and partial social security numbers of Commission employees;
> b. Commission bank account information, including the identification of authorized signers for two accounts, the routing number and account number of the Commonwealth of Pennsylvania's General Fund Account, the account number for a Commission checking account, and balances of certain Commission accounts;
> c. Discussions between attorneys (both in-house counsel and outside counsel) regarding a variety of legal matters, including case valuations and settlement strategies; in-house counsel's memorandum regarding the exercise of Commission powers and an internal report describing pending legal matters; in-house counsel's discussion of property acquisitions; and outside counsel's comments about a court order involving stormwater damage to private property, key points for the Commission to address during an arbitration hearing, and discovery needed for a case involving a truck accident;
> d. Software developer access keys for the Commission's SAP system, IP addresses, server names, and the results of internal testing on software reflecting confidential employee information;

(continued…)

that the OAG be directed not to turn over any other materials during the pendency of the appeal. Given the privilege issues implicated, the Commission is entitled to relief.

In In re Thirty-Third Statewide Inv. Grand Jury, 86 A.3d 204 (Pa. 2014), we considered the application of attorney-client and work product privileges in the context of a grand jury investigation into the operation of a Commonwealth agency – the Commission. (That grand jury investigation led to these prosecutions.) We ultimately

---

(…continued)

e. Internal investigation reports and communications by the Commission's Inspector General's office reflecting, *inter alia*, surveillance activities and the identities of investigation subjects, confidential informants, and individuals who submitted tips about potential misconduct through the Commission's email "Tipbox";

f. The design and composition of a Turnpike tunnel and a structural steel plan for a bridge over the Turnpike;

g. A chart prepared by Wells Fargo Bank entitled "Pennsylvania Turnpike Pittsburgh Vault Activity" listing voice response unit (VRU) identification numbers and deposit account numbers;

h. Cash pick-up schedule by armored trucks from a Turnpike interchange;

i. Employees' medical procedures and/or medical leave requests;

j. Scheduling and results of drug tests for employees;

k. Information regarding beneficiaries of retirees' benefits, including their social security numbers, home addresses, and whether the retiree receives disability benefits or is deceased;

l. Employees' payroll deductions and federal tax filing status;

m. Employees' home phone numbers and personal cell phone numbers;

n. Employee disciplinary actions;

o. E-Z Pass account holder information as well as a Payment Card Industry (PCI) Quarterly Scan Executive Report, which identifies IP addresses and security ratings;

p. A Human Resources Department investigation of a harassment claim, including the identities of the complainant, the accused, and interview summaries; and

q. Internal discussions regarding the Commission's response to a fatal accident on the Turnpike.

Emergency Application at 7-9.

held that, in the specific circumstances presented, and given the role of the OAG, in response to grand jury subpoenas, the Commission was not entitled to a protective order shielding its communications with government lawyers from the OAG. Notably, however, nothing in our decision in Thirty-Third Grand Jury remotely suggested that surrender of documents – as stated, approximately 30 million documents here – to the OAG for grand jury purposes means that all privileges are lost, nor did it suggest that the OAG, and the trial court in any ensuing prosecution, are absolved of their duties under discovery rules, including the protection of privileged material. See, e.g., Pa .R. Crim. P. 573 (pretrial discovery and inspection).

In its April 16, 2014 order denying the Commission's motion for protective order, the trial court took the following measures to protect confidential and sensitive material from disclosure in the underlying criminal prosecutions:

> [T]o the extent that there is a possibility that the discovery materials may contain confidential or personal information, the parties are directed that any information or material obtained from the Pennsylvania Turnpike Commission and produced by the Commonwealth as part of discovery in this matter shall not be used, or the contents thereof communicated or disclosed to any person or entity, except as is necessary to the criminal trial of this matter.

In other words, the court determined that the OAG, which first received the copied drives and servers from the Commission three years ago (with approved access since the Thirty-Third Grand Jury decision on February 18, 2014), and which apparently has not yet reviewed those documents such that it can properly respond to defense discovery requests issued in its own prosecution, can simply turn over the material to the defendants, and place the onus on defense counsel – whose primary duties are to their clients, not to third parties -- to determine what material – some of which is obviously

privileged or intensely private -- "shall not be used" outside the context of the criminal trial in this matter. In my view, this approach is obviously inadequate.

In criminal matters, discovery is governed by specific rules, and the obligation is upon the prosecution to determine what material in its possession is properly discoverable. Our ruling for the distinct purposes of the underlying Grand Jury investigation did nothing to alter that obligation, and consign the determination of the status of protected material to defense counsel. Given the nature of the materials the trial court essentially authorized for unlimited disclosure to defense counsel, the Commission is obviously aggrieved and directly so; it is one thing for a bell that cannot be unrung to sound in the narrow confines of a confidential, sealed grand jury investigation; it is quite another when it is in the context of a specific criminal prosecution, and the protection of private and privileged information consigned to defense counsel whose primary duty is to their specific clients and not to the Commission or its personnel.

Messrs. Justice Saylor and Baer, Madame Justice Todd, and Mr. Justice Stevens join this Concurring Statement.