J-S71036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| JAVIER RODRIGUEZ | |
| Appellant | No. 3155 EDA 2015 |

Appeal from the Judgment of Sentence September 14, 2015
in the Court of Common Pleas of Delaware County Criminal Division
at No(s): CP-23-CR-0007407-2014

BEFORE: BOWES, PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MARCH 16, 2017**

Appellant Javier Rodriguez files this appeal from his sentence of life imprisonment without parole for second-degree murder[1] plus a consecutive term of three to six years' imprisonment for carrying firearms without a license.[2]  Appellant argues the trial court abused its discretion when it denied his motion for mistrial due to a conflict of interest that prevented his counsel from presenting evidence to rebut the testimony of a Commonwealth witness.  We affirm.

The trial court summarized the factual history of this case as follows:

> On September 17, 2014, [Appellant] and a companion, "Aaron[,]" went to 113 Hancock Street in Chester, PA, to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(b).

[2] 18 Pa.C.S. § 6106(a).

buy Percocet. Anthony Capetola and Maria Occhiolini lived at this address with Ms. Occhiolini's young son. The victim, Robert Dewees, and Mr. Capetola were longtime friends[,] and Dewees frequently visited Capetola's home. The victim had a prescription for Percocet and it was widely known that he sold the Percocet to others.

Aaron was a friend of Ms. Occhiolini's. He was a daily visitor to the home and obviously was known to Ms. Occhiolini. He was also known to Mr. Capetola. At about 4:30 p.m. on September 17, 2014[,] Aaron and [Appellant] arrived at the home and Aaron told Ms. Occhiolini that [Appellant] was there to buy Percocet from Dewees. Dewees was not interested in selling the pills to [Appellant]. [Appellant] and his companion ordered Dewees to give up either "the pills" or the money. When Dewees refused, the men attempted to relieve him of a backpack that held cash and a cell phone[,] and a struggle ensued. [Appellant] pulled a large, black semi-automatic handgun from his waistband and pointed the gun at Dewees. When Dewees refused to relinquish the backpack[, Appellant] shot him in the chest.

Trial Ct. Op., 12/3/15, at 2-3 (record citations omitted).

James Wright, Esq., an attorney in the Public Defender's Office ("defense counsel"), was appointed to represent Appellant. Capetola testified at Appellant's preliminary hearing in November 2014, and defense counsel anticipated that Capetola would testify during trial as a Commonwealth witness. N.T., 7/14/15, at 8-9.

Shortly before the scheduled date of trial, defense counsel learned that Charles Williams, Esq., another attorney in the Public Defender's Office, had represented Capetola several months earlier on an unrelated drug charge. Capetola had entered a negotiated plea of guilty to possession of cocaine in return for a sentence of one year's probation and community service. Trial

Ct. Op. at 4 n.3. "This sentence fell within the standard range of restorative sanctions to one month suggested by the Pennsylvania Sentencing Guidelines. His prior record score was zero." *Id.*

On the morning of trial, defense counsel advised the trial court that he might need to cross-examine Capetola about whether the Commonwealth induced his testimony against Appellant by giving him a favorable sentence in his own case. N.T., 7/14/15, at 8-9. Defense counsel requested that Capetola waive "[a] potential conflict [of interest] on his end because my office is potentially doing him a disservice by impeaching him on his own [guilty plea in his] criminal [case] that we represented him [on]." *Id.* at 9. The assistant district attorney responded:

> [W]ith respect to Mr. Capetola and whether there is any conflict of interest on his part, Mr. Capetola was a former client of the Public Defender's Office. He went through the criminal justice system. His case is closed. He pled guilty in April. We're in July now. The period of appeal has closed. He is not appealing that conviction. He's no longer represented by the Public Defender's Office. The fact that Mr. Capetola has a criminal conviction during the pendency of this investigation, yes, I understand that's subject to cross-examination. But there's no confidential information that the Public Defender's Office learned through their representation of Mr. Capetola which will come in during the trial. There's nothing that's going to be used against him to incriminate him in the other criminal activity. The only thing that's going to be permitted for cross-examination purposes is the fact that he had a criminal conviction. And that's the extent of what will be addressed. That's public information. It's part of the [Office of Judicial Support] records. It's something that anyone can go on the open source and find out. So there is no conflict of interest on behalf of Mr. Capetola with respect to the Public Defender's Office.

*Id.* at 9-10. The trial court ruled that there was no conflict, adding that defense counsel "can certainly cross-examine [Mr. Capetola] to see if there was any deal or any leniency offered in connection with his testimony here today." *Id.* at 11.

The trial court recounted the trial proceedings as follows:

> Mr. Capetola testified at trial . . . that he had been out of the house earlier[,] and when he returned[,] Aaron and [Appellant] were there with Dewees. He heard the three men arguing about money. The physical altercation followed and Aaron tackled Mr. Dewees. Mr. Capetola helped Mr. Dewees to his feet. Mr. Capetola then turned toward [Appellant] and watched him shoot Dewees in the chest from a distance of about three feet. After the shooting[,] [Appellant] and Aaron took off running. Mr. Capetola called 911[,] and assistance arrived shortly thereafter. Responding officers found Mr. Dewees gasping for air and unable to speak. Emergency medics attempted to provide medical aid[,] but Mr. Dewees succumbed to his wounds at the scene. Thereafter, on September 19, 2014[,] Capetola picked [Appellant]'s picture from a photo array and identified him as the shooter. He also identified [Appellant] at the preliminary hearing and made [an] in-court identification at trial. Ms. Occhiolini also identified [Appellant] in a photo array and at trial.
>
> Defense counsel attempted to impeach the credibility of Mr. Capetola by suggesting that the victim, Mr. Dewees, frequently sold Percocet from Mr. Capetola's house and that Mr. Capetola was very much aware of that fact. Mr. Capetola conceded that he was aware that Mr. Dewees sold Percocet but maintained that these transactions took place at locations other than the Capetola residence. [Defense] counsel further suggested that drug paraphernalia was in Capetola's residence and that Capetola had been drinking before the shooting took place. Additionally, [defense] counsel raised a discrepancy in the information Capetola provided to the police immediately after the shooting. Although Mr. Capetola knew and

recognized Aaron as one of the actors, he did not provide law enforcement with his name when he recounted the incident for investigators after the killing. [Defense] counsel cross-examined Mr. Capetola extensively regarding his failure and perhaps unwillingness to identify Aaron, a man known to him, as one of the actors and his willingness to identify [Appellant] as the shooter. Near the conclusion of cross-examination, [defense] counsel raised the fact that about two weeks after Mr. Capetola gave his initial statement and before he testified at the preliminary hearing, he was arrested and faced drug charges. Mr. Capetola's case was continued at least three times in District Court by the District Attorney's Office and was finally resolved with a negotiated guilty plea on April 27, 2015. [Defense] counsel inquired:

Q: And they weren't continuing your case to help you out, were they?

A: What do you mean help me out?

Q: To give you a better deal because you were a Commonwealth witness, right? You didn't get a better deal, right?

A: A better deal for what? No. I didn't get a—

Q: For your—

A: —better deal.

Q: —open drug charges.

A: For what? An open drug charge?

Q: Yes sir.

* * *

Q: Okay, and that was because the D.A.'s office was trying to help you out because you were one of their witnesses?

A: It had nothing to do with the D.A.'s office.

On redirect[,] Mr. Capetola testified that in April of 2015[,] he pled guilty to possession and also that he did not tell either his attorney or the assistant district attorney handling the case that he was a witness in a homicide case.

The next day, July 15, 2015[, defense] counsel moved for a mistrial and requested an *ex parte* hearing. Mr. Wright argued that a conflict of interest existed because after Mr. Capetola testified, Mr. Wright spoke with Assistant Public Defender Charles Williams. Mr. Williams represented Mr. Capetola in his drug case. Mr. Wright represented that in fact, Capetola told Mr. Williams that he was a witness in a homicide case.

The request for an *ex parte* hearing was granted. Mr. Wright presented Williams and offered this testimony:

[Defense counsel]: Without getting to what may or may not be in the file, did you indicate to me that you believe the file contains information that Mr. Capetola had advised our office that he was a witness in a homicide?

Mr. Williams: Yes.

[Defense] counsel argued that because he was unable to bring this testimony before the jury to counter Capetola's insistence that he did not tell his attorney that he was a witness in this case, a mistrial was warranted.

Trial Ct. Op. at 3-5 (record citations omitted). The trial court denied the motion.

On July 16, 2015, the jury found Appellant guilty of the above-mentioned crimes. On September 14, 2015, the trial court sentenced Appellant. Appellant filed a timely appeal on October 13, 2015, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises one issue in this appeal:

> Whether the trial court erred in denying Appellant's [m]otion for a mistrial when [defense] counsel was restricted in impeaching an eyewitness due to another attorney in [c]ounsel's office having previously represented the witness on criminal charges[?]

Appellant's Brief at 3.

Appellant claims that the trial court should have granted a mistrial because defense counsel's conflict of interest prevented him from presenting evidence of a prior inconsistent statement that Capetola made to Attorney Williams, Capetola's former counsel in the Public Defender's Office. By raising "[attorney-client] privileged communications between [Capetola] and [Williams]," Appellant argues, "the prosecutor created a situation where Appellant's counsel was torn between his obligation to Appellant and what he believed his duty was to a former client [Capetola]." Appellant's Brief at 7. Appellant further complains: "[T]he fact that Appellant's counsel did not call Capetola's former attorney to impeach [Capetola] amounted to actual prejudice." *Id.* No relief is due.

The court may grant a mistrial "when an event prejudicial to the defendant occurs during trial." Pa.R.Crim.P. 605(B). A mistrial is a remedy of last resort; it is not appropriate unless "an incident is of such a nature that its unavoidable effect is to deprive the appellant of a fair and impartial tribunal." *Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super.

2012). "The decision to grant a mistrial is within the discretion of the trial judge[.]" ***Commonwealth v. Brown***, 711 A.2d 444, 455 (Pa. 1998).

The trial court addressed Appellant's request for a mistrial as follows:

> Communications between Mr. Capetola and Mr. Williams made during the course of Mr. Williams's prior representation were privileged. ***See*** 42 Pa.C.S. § 5916, Confidential communications to attorney, ("In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."). The attorney-client privilege is for the benefit of the client, as the privilege holder and exists regardless of whether disclosure is sought to be compelled from the attorney or from the client himself. . . . [Defense counsel] cross-examined Mr. Capetola thoroughly given this limitation, one that in any case could not be overcome by different counsel. The jury heard the terms of the plea and Mr. Capetola's insistence that he did not benefit in his own negotiations from his role as a witness in this homicide trial. [Defense] counsel appropriately and effectively challenged Capetola's credibility through cross-examination without resort to breach of the existing privilege, an effort which would not have been allowed on the facts before the court. Given such facts[,] a conflict did not exist and [Appellant] was not prejudiced. Therefore, [Appellant's] claim that he was deprived of a fair and impartial trial is without merit.

Trial Ct. Op., at 8-9 (some citations omitted).

We agree with the trial court's decision to deny a mistrial, albeit for different reasons.[3] Ordinarily, Capetola's statement to attorney Williams that he was a witness in a homicide case ordinarily would be privileged and

---

[3] ***See Commonwealth v. Miller***, 787 A.2d 1036, 1038 (Pa. Super. 2001) ("[I]f a trial court's decision is correct, we may affirm on any ground").

non-admissible. Here, however, Capetola testified that he did **not** tell Williams he was a witness, which opened the door for Williams to testify that Capetola said he **was** a witness. Thus, defense counsel had no basis to claim that Williams' testimony was inadmissible and no basis for seeking a mistrial.

Section 5916 of the Judicial Code provides: "In a criminal proceeding counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client." 42 Pa.C.S. § 5916. "The attorney-client privilege runs to the benefit of the client"—here, Capetola. *In re Thirty-Third Statewide Investigating Grand Jury*, 86 A.3d 204, 223 (Pa. 2014). The purpose of this privilege is "to foster candid communications between counsel and client, so that counsel may provide legal advice based upon the most complete information from the client." *Id.* at 216.

Under the "fair response" doctrine, the Commonwealth may introduce otherwise privileged evidence when the defendant or defense counsel opens the door for such evidence. *See, e.g.*, *Commonwealth v. Lettau*, 986 A.2d 114, 120-21 (Pa. 2009) (where defendant testified on direct examination that he had been cooperative during police investigation and had provided investigating officer with his side of the story, prosecutor was entitled to impeach defendant with cross-examination that suggested

- 9 -

defendant had not provided officer with relevant information known by defendant; prosecutor did not violate defendant's post-arrest right to remain silent, because cross-examination was fair response to defendant's tactic of portraying himself as cooperative). In particular, "[a] litigant opens the door to inadmissible evidence by presenting proof that creates a false impression refuted by the otherwise prohibited evidence." ***Commonwealth v. Nypaver***, 69 A.3d 708, 716 (Pa. Super. 2013).

In this case, when Capetola testified that he did **not** speak with Attorney Williams about serving as a witness in a homicide case, he knew or should have known that he placed in question whether he actually had a conversation with Williams on this subject. Thus, he opened the door for Williams to testify about whether he discussed this subject with Capetola, even though the attorney-client privilege would normally preclude this testimony. Because Appellant had the right to rebut Capetola's testimony with Williams' testimony, the more extreme remedy of a mistrial was unnecessary. The trial court thus acted within its discretion by denying Appellant's motion for a mistrial.

In any event, Appellant did not suffer any prejudice from the absence of Williams' testimony, because defense counsel was still able to impeach Capetola's credibility through other means. Specifically, "[t]he jury heard the terms of [Capetola's negotiated guilty] plea and Capetola's insistence

that he did not benefit in his own negotiations from his role as a witness in this homicide trial." Trial Ct. Op. at 9.

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judge Panella joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2017